UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No. _____

FILED
JAN 1 0 2005
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | |
|---|---|
| VICTORIA T. McPHATTER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **SECOND NOTICE OF REMOVAL** |
| ) | **1:05CV00027** |
| JEFFREY LIN SWEITZER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

PLEASE TAKE NOTICE that Defendants Jeffrey Lin Sweitzer, Matthew James Muller, Sr., Samuel Boyce Rankin, Randy Matz, Joseph M. Zentner, Jr., and Citigroup Global Markets Inc. f/k/a Salomon Smith Barney, Inc. (collectively "Defendants"), by and through their undersigned counsel, pursuant to 28 U.S.C. §§ 1441 and 1446(b), hereby remove this action from the North Carolina General Court of Justice, Superior Court Division for Guilford County, to the United States District Court for the Middle District of North Carolina, Greensboro Division.

The Defendants are removing this case from state court for the second time because newly discovered facts, specifically the deposition of Hugh Q. Smith, one of the putative class representatives, demonstrates that the claims asserted in the Amended Complaint are subject to mandatory preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b) and 78bb(f).

In support of their removal, Defendants state as follows:

2292309.05
LIB: Charlotte

## BACKGROUND AND PROCEDURAL HISTORY

1. On or about January 21, 2003, fifty plaintiffs commenced an action in the North Carolina General Court of Justice, Superior Court Division for Guilford County, captioned <u>Victoria T. McPhatter v. Jeffery Lin Sweitzer</u>, Civil Action No. 03-CVS-3555 (the "State Court Action") by the filing of an Application and Order Extending Time to File Complaint pursuant to N.C. Rule Civ. P. 3.

2. Defendants Jeffrey Lin Sweitzer ("Sweitzer"), Matthew James Muller, Sr., ("Muller"), Samuel Boyce Rankin ("Rankin"), Randy Matz ("Matz"), and Joseph M. Zentner, Jr. ("Zentner") received a copy of the Summons on January 24, 2003.

3. Defendant Salomon Smith Barney ("SSB") received a copy of the Summons on January 22, 2003, and SSB was served with a copy of the Complaint on February 12, 2003.

4. Thereafter, on June 29, 2004, the Complaint was amended with the consent of the Defendants (the "Amended Complaint"). In the Amended Complaint, nine additional plaintiffs asserted the same claims as the original fifty plaintiffs. One of the original plaintiffs in the interim had voluntarily dismissed her claims. Accordingly, there are now fifty-eight (58) plaintiffs in this case.

5. The fifty-eight plaintiffs are all former clients of Defendant SSB who allege that their investment accounts failed to reach certain rates of return promised by employees of Defendant SSB. (*See* Complaint ¶ 98.) Those fifty-eight plaintiffs assert that they are entitled to a recovery based on common law claims of breach of fiduciary duty, negligence, negligent misrepresentation, breach of contract, aggravated breach of contract, and equitable estoppel, as well as a statutory claim under North Carolina's Unfair and Deceptive Trade Practices Act,

2292309.05
LIB: Charlotte

2

N.C.G.S. § 75-1.1 *et seq.*, and North Carolina's Racketeer Influenced and Corrupt Organizations Act, N.C.G.S. § 75D-1 *et seq.*

6. Three of those plaintiffs (Victoria T. McPhatter, Alexis M. Schoenthal, and Hugh Q. Smith) assert that they are adequate class representatives for the putative class claims. As of the date of this removal, the putative class representatives have filed a motion for class certification, but that motion has not been briefed or further addressed by the state court. Rather, the parties have been engaged in discovery as to certification and as to the merits of the claims, after Defendants unsuccessfully sought to bifurcate discovery in accordance with Section 30.12 of the Manual For Complex Litigation.

7. During the deposition of Mr. Smith, one of the putative class representatives, Defendants discovered facts which demonstrate that SLUSA preempts each of the claims asserted in this case.

**PRIOR REMOVAL AND REMAND**

8. On February 21, 2003, the Defendants removed this action to the United States District Court for the Middle District of North Carolina on the ground that the class action claims asserted in the Amended Complaint constituted a "covered class action" within the meaning of 15 U.S.C. § 77p(f)(2)(A) and/or 15 U.S.C. § 78bb(f)(5)(b)(i). Thereafter, the Plaintiffs filed a motion to remand on the ground that the claims asserted did not fall within the ambit of SLUSA.

9. On August 14, 2003, this Court heard argument on the Defendant's Motion to Dismiss and the Plaintiffs' Motion to Remand. A copy of the transcript of that hearing is attached hereto as <u>Exhibit A</u>. During the course of that hearing, counsel for the Plaintiffs asserted that the securities claims "fall totally outside" what has been alleged in this case (Transcript, Exhibit A at 9-10), that the Plaintiffs are seeking to recover for their lost income

and benefits (id. at 12-13), and that the claims related to the purchase and sale of securities would be brought in NASD arbitration. (Id. at 6.) Thereafter, the Court entered its Memorandum Opinion dated September 8, 2003, remanding this case to State Court (the "Memorandum Opinion"). A copy of the Memorandum Opinion is attached hereto as <u>Exhibit B</u>. The Court found that the case should be remanded based on a review and analysis of the "true character and nature of Plaintiffs' state law claims." (Memorandum Opinion, at 8.) The Court found that the Complaint did not allege that Plaintiffs bought or sold covered securities in reliance on any alleged misrepresentations, that the involvement of securities was merely tangential to the claims asserted, and that there was no allegation that Defendants provided financial advice as to the purchase or sale of covered securities. (Id. at 9.) As demonstrated below, each of those conclusions, which were based on the allegations in the Complaint, are now refuted by the testimony of the class representative.

**NEWLY DISCOVERED FACTS LEADING TO SECOND REMOVAL**

10. On December 13 and 14, Defendants deposed Hugh Smith, one of the putative class representatives. During the course of that deposition, Mr. Smith testified both that (1) he understood his money would be invested in mutual funds and (2) he is seeking to recover his investment losses in this suit. The relevant testimony is as follows:

> Q. Now, you understood that in order to get you -- your words, get you 12 percent, Mr. Sweitzer had to invest your money, is that correct? You have to say yes or no.
> A. Yes.
> Q. And you understood that Exhibit No. 302 and Exhibit No. 303 [1] were his recommendations about how he was going to invest your money to get 12 percent, is that right?
> A. Yes.
> Q. And that is, in fact, how Mr. Sweitzer did invest your money, isn't it?
> A. Yes.

---

[1] The exhibits to Mr. Smith's deposition, Exhibits 301, an Income Distribution Analysis for Mr. Smith, and Exhibits 302 and 303, a Hypothetical Asset Allocation, are attached hereto collectively as Exhibit C.

LIB: Charlotte

4

Case 1:05-cv-00027 Document 1 Filed 01/10/05 Page 4 of 11

| | |
|---|---|
| Q. | And he invested your money over time using a method called dollar cost averaging, didn't he? |
| A. | I don't have a clue. |
| Q. | Did you ever review your statements to determine how Mr. Sweitzer actually invested your money once you delivered it to him? |
| A. | I looked at my statements to see that it was invested that way, yes. I saw the funds on my 3 monthly statements, yes. |
| Q. | And he did invest the money as he recommended on Exhibit No.'s 302 and 303, didn't he? |
| A. | Yes, sir. |
| Q. | And you agreed with those investments, didn't you? |
| A. | Yes, sir. |
| Q. | And during this meeting on December 15th, Mr. Sweitzer had solicited you to invest in those funds, hadn't he, when he used this sheet? |
| A. | Yes. |
| Q. | And that solicitation was done in connection with Exhibit No. 301, which is the income distribution analysis at nine percent, that solicitation was done in connection with exhibit -- the second page of Exhibit No. 301, which is the six percent distribution sheet, and it was done in connection with Exhibit No.'s 302 and 303, wasn't it? |
| A. | When you say connection -- |
| Q. | He was using these documents when he solicited your investments, wasn't he? |
| A. | Yes, sir, he was using these documents. |
| Q. | And you understood the purpose of him using these documents was to solicit your investment in these funds, is that right? |
| A. | Yes, sir. |
| Q. | And that is, in fact, how you invested your funds, is that right? |
| A. | Yes, sir. |
| Q. | And the reason for this lawsuit is your complaining about the return that you received on these investments, is that right? |
| A. | Yes, sir. |
| Q. | You expected to get 12 percent, is that correct? |
| A. | Yes, sir. |
| Q. | And you didn't get it? |
| A. | Yes, sir. |
| Q. | And that's why you have sued Mr. Sweitzer and Salomon Smith Barney, is that right? |
| A. | Yes, sir. |

(12/13/04 Deposition of Hugh Q. Smith ("Smith Depo."), pp. 114-16.)

11.     In his testimony, Mr. Smith is referring to the income distribution analysis (Ex. 301), three versions of which were attached to the Complaint. In addition, he is reviewing a document entitled "hypothetical asset allocation" (Ex. Nos. 302 and 303) which showed the

2292309.05
LIB: Charlotte

5

exact investments that Mr. Smith made. He testified that he received and reviewed the hypothetical asset allocation documents at the same time that he reviewed the income distribution analysis document. In an attempt to avoid SLUSA preemption, Plaintiffs did not attach any version of the hypothetical asset allocation to the Complaint or the Amended Complaint. Even though, as the Court previously noted, the income distribution analysis (Ex. 301) includes a disclaimer that that document alone does not constitute a solicitation for the purchase or sale of any securities, Mr. Smith testified that the income distribution analysis and the hypothetical asset allocation documents together were used for the purpose of soliciting an investment in specific mutual funds. That testimony unequivocally demonstrates that the Court's initial ruling, however, was made without the benefit of a complete view of the salient facts. Based on his testimony, it is unmistakable that Mr. Smith purchased mutual funds based on Defendants' solicitations and now seeks to recover based in significant part on how those funds performed. Therefore, this case is a covered class action.

12. This removal is timely. Upon conclusion of Mr. Smith's deposition on December 14, 2004, and receipt of the transcript from that deposition on or about December 21, 2004, it became apparent to counsel for the Defendants that Plaintiffs asserted claims that constitute a "covered class action" within the meaning of SLUSA. As testified by Mr. Smith, the Plaintiffs are complaining about the way in which their retirement funds were invested and seek to obtain a recovery based on the performance of the investments that were solicited by the individual Defendants. Defendants have therefore timely sought to remove this action to this Court.

**BASIS FOR REMOVAL**

13. Pursuant to 28 U.S.C. § 1446(b), defendants may acquire the right to a second petition to remove. Section 1446(b) requires that a notice of removal must be filed within thirty

days after the receipt of the summons and complaint. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996). The second paragraph of that section further provides that if the case stated in the complaint is not removable, then the defendant may remove the case within thirty days after receipt by the defendant of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . . " The deposition transcripts from the deposition of Mr. Smith constitute an other paper which entitle the Defendants to remove this case.

14. It is well established that when a case is not removable based on the allegations contained in the complaint, then "the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal." *Lovern v. General Motors Corp.,* 121 F.3d 160, 162 (4th Cir. 1997). Many courts, including the United States District Court for the Middle District of North Carolina, recognize a defendant's right to seek subsequent removals after remand. *See, e.g., In re: Air Crash Near Morrisville,* 1997 U.S. Dist. LEXIS 389, *12 (M.D.N.C., Feb. 6, 1997); *see also Browning v. Navarro,* 743 F.2d 1069, 1079-80 n.29 (5th Cir. 1984) (noting that second removal petitions are permitted).

15. The general rule provides that once a case is remanded to state court, a defendant is precluded from seeking a second removal only on the same ground. *See, e.g., St. Paul & C. Ry. Co. v. McLean,* 108 U.S. 212, 2 S.Ct. 498, 500 (1883). A defendant is not precluded from seeking removal when new facts are discovered or the factual basis for the claims asserted in the complaint change. The prohibition on successive removals does not prohibit a defendant from seeking to establish federal jurisdiction on the same legal basis, for example federal question or diversity jurisdiction. Rather, a defendant is only prohibited from removing the case based on the same "pleading or event that made the case removable." *S.W.S. Erectors, Inc. v. INFAX,*

2292309.05
LIB: Charlotte

*Inc.*, 72 F.3d 489 (5th Cir. 1996) (finding that deposition transcript satisfies "other paper" requirement of 1446(b), entitling defendant to successive removal ) (citing *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir.) cert. denied, 419 U.S. 986 (1974)). "A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when subsequent pleadings or events reveal a new and different ground for removal." *One Sylvan Road North Assocs. v. Lark Int'l Ltd.*, 889 F. Supp. 60, 62 (D. Conn. 1995). The second paragraph of section 1446(b) anticipates that a defendant might remove a case after the initial pleading stage and thereby implies that multiple removals are permissible.

16. Under SLUSA, "no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b). *See also* 15 U.S.C. § 78bb(f)(1).

17. Based on Mr. Smith's testimony, this action is a "covered class action" within the meaning of 15 U.S.C. § 77p(f)(2)(A) and/or 15 U.S.C. § 78bb(f)(5)(B)(i). This Court previously determined that "the financial and retirement planning was separate and apart from any eventual purchase of covered securities," (Memorandum Opinion, Exhibit B at 10), and that "Plaintiffs complain about erroneous information, which is unconnected with securities," (id.), and that "[t]he projected rates of growth . . . did not concern covered securities. At the time of Defendants' alleged misrepresentations it was equally possible that Defendants would invest in rental property or other assets as it was that Defendants would invest in covered securities." (Id. at 11.) As the testimony of Mr. Smith, the putative class representative demonstrates, those

2292309.05
LIB: Charlotte

conclusions are now refuted by the record. Rather, the class complains about advice and information provided by the Defendants in connection with the solicitation and purchase of covered securities. The putative class representative has now testified that the services provided by the Defendants directly concerned the purchase and sale of covered securities. The alleged failure of Plaintiffs' investment accounts to achieve the promised rates of return necessarily involves the performance of the covered securities which Mr. Smith was solicited to purchase. Within thirty days of obtaining that testimony, Defendants have exercised their right of removal.

18. Finally, the Amended Complaint makes clear that Plaintiffs claims are based on alleged misrepresentations or omissions of material fact by employees of SSB and/or the use of a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. (*See* Amended Complaint ¶¶ 3, 5-6, 98-100, 178, 182-186.) Again, the true substance of these allegations was first made clear during Mr. Smith's testimony, as outlined above and elsewhere.

19. For the foregoing reasons, this Court has original jurisdiction over this action pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2) and 28 U.S.C. § 1331, without regard to the amount in controversy or the citizenship of the parties, and is properly removable pursuant to 15 U.S.C. §§ 77p(c) and 78bb(f)(2) and 28 U.S.C. § 1331. *See, e.g., Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229 (D.N.J. 2000).

20. Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings served upon Defendants in the State Court Action are attached hereto as <u>Exhibit D</u>.

9

2292309.05
LIB: Charlotte

Case 1:05-cv-00027   Document 1   Filed 01/10/05   Page 9 of 11

21. By filing this Second Notice of Removal, Defendants do not waive any defense that may be available to them, including but not limited to any objection to the venue of this action.

22. A copy of this notice will be filed with the Clerk of Superior Court for Guilford County, North Carolina, as required by 28 U.S.C. § 1446(d).

23. Defendants will give written notice of the filing of this notice to all adverse parties as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants respectfully request removal of this action from the North Carolina General Court of Justice, Superior Court Division for Guilford County, to the United States District Court for the Middle District of North Carolina, Greensboro Division.

This the 10th day of January, 2005.

George C. Covington
N.C. State Bar No. 12370
John H. Culver III
N.C. State Bar No. 17849
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 331-7400
Facsimile: (704) 331-7598
**Attorneys for Defendants**

OF COUNSEL:

KENNEDY COVINGTON LOBDELL & HICKMAN, L.L.P.
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 331-7400
Facsimile: (704) 331-7598

LARGE ATTACHMENTS - SEE ORIGINAL DOCUMENT