3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

1:05cv00027

FILED ✦
JAN 1 0 2005
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | | |
|---|---|---|
| VICTORIA T. McPHATTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANTS'** |
| vs. | ) | **MOTION TO DISMISS** |
| | ) | |
| JEFFREY LIN SWEITZER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Jeffrey Lin Sweitzer, Matthew James Muller, Sr., Samuel Boyce Rankin,

Randy Matz, Joseph Zentner and Citigroup Global Markets Inc., f/k/a Salomon Smith Barney

Inc. ("Salomon Smith Barney") (collectively, "Defendants"), by and through counsel, file this

Memorandum of Law in Support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

## I.     Introduction

In this putative class action, Plaintiffs claim that Defendants induced the Plaintiffs to

retire from their jobs at BellSouth by promising certain rates of return on their retirement funds

which were to be invested with Defendants. Plaintiffs claim that they were damaged as a result

of the failure of their investments to produce the returns that Plaintiffs allege they were led to

expect by various alleged oral and written representations made by Defendants. As

demonstrated below, Plaintiffs' claims, as detailed in the deposition of the class representative,

are based on the alleged misrepresentations and omissions of material fact and the use of

manipulative or deceptive devices or contrivances in connection with the purchase or sale of

2294750.01
LIB: Charlotte

covered securities. Therefore, Plaintiffs' claims are subject to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which mandates that Plaintiffs' class claims must be dismissed.

## II.     Plaintiffs' Claims

This is a putative class action by numerous clients of Defendants who allege that the transactions in their investment accounts failed to generate rates of return that employees of Salomon Smith Barney had allegedly represented would be achieved. *See* Amended Complaint (herein "Complt.") ¶ 107. In particular, Plaintiffs claim that Defendants promised that if the Defendants were entrusted with the Plaintiffs' retirement funds for investment purposes, then the Defendants would earn "an asset growth rate" of 12%. According to the Plaintiffs that representation was made both orally and through a document entitled "Income Distribution Analysis." The Plaintiffs also allege that the Defendants used a document entitled "Hypothetical Asset Allocation" in connection with the alleged misrepresentations and that those documents were used together to solicit an investment in specific covered securities. Based on these assertions, and others, the Amended Complaint purports to assert common law claims of breach of fiduciary duty, negligence, negligent misrepresentation, breach of contract, "aggravated breach of contract," and equitable estoppel, as well as a statutory claims under North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et. seq.*, and North Carolina's Racketeer Influenced and Corrupt Organizations Act, N.C.G.S. § 75D-1 *et. seq.*

At their core, Plaintiffs' claims are premised on the assertion that Defendants made materially false and misleading statements concerning the anticipated rates of growth and income that would be generated in their accounts as a result of their securities transactions with Defendants. Plaintiffs have sought throughout the pendency of this case to avoid the application

2

2294750.01
LIB: Charlotte

of the securities laws by reciting that the misrepresentations about which they are complaining were not made in connection with the purchase or sale of securities. In a previous removal of this case, after oral argument on the Plaintiffs' motion to remand for lack of jurisdiction, the Court determined that the allegations in the Complaint did not assert that the Plaintiffs bought or sold covered securities in reliance on any alleged misrepresentations, that the involvement of securities was merely tangential to the claims asserted and that there was no allegation that Defendants provided financial advice as to the purchase or sale of covered securities.

Discovery that has occurred in the case, after remand, now refutes those conclusions and demonstrates that the claims are in fact preempted by SLUSA. As detailed below, Hugh Q. Smith, one of the putative class representatives has testified that the document about which the Plaintiffs complain, the "Income Distribution Analysis" containing the 12% reference, was used by the Defendants when soliciting the purchase of covered securities. Mr. Smith also testified that the Defendants made representations and failed to disclose other facts which would have made the Defendants' representations not misleading in connection with the purchase and sale of securities. He further testified that he relied on those representations in agreeing to authorize the purchases and sales that occurred in his accounts. Based on Mr. Smith's testimony, the claims that are asserted in the Amended Complaint are preempted by SLUSA.

### III. The Securities Litigation Uniform Standards Act of 1998

The Private Securities Litigation Reform Act of 1995 (the "Reform Act") enacted certain pleading and procedural requirements to guard against, in part, the potential for abuse in connection with meritless class action securities fraud claims. *Dudek v. Prudential Secs., Inc.*, 295 F.3d 875, 877 (8th Cir. 2002). An unintended result of the Reform Act was to "drive many would-be plaintiffs to file their claims in state court, based on state law, in order to circumvent

2294750.01
LIB: Charlotte

the strong requirements established by the statute." *Id.* Congress responded by enacting the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")[1] to "prevent plaintiffs from seeking to evade the protections that federal law provides against abuse litigation by filing suit in state, rather than federal, courts." *Id.; see also* H.R. Conf. Rep. No. 105-803 at 14-15 (1998). SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to preempt certain state law claims and to provide for the removal to federal court, and subsequent dismissal, of class actions asserting those claims. *Id.* In enacting SLUSA, Congress evinced a clear intent toward broad application of the Act. *Zoren v. Genesis Energy, L.P.*, 195 F.Supp.2d 598, 603 (D.Del. 2002) (citations omitted).

The essential purpose of SLUSA is to prevent class action plaintiffs from making an end run around the pleading requirements and procedural protections that the Reform Act provides in securities fraud cases by assuring that such claims be brought in federal court, pursuant to federal securities laws. "It did this by making federal court the <u>exclusive</u> venue for class actions alleging fraud in the sale of certain covered securities and by <u>mandating</u> that such class actions be governed exclusively by federal law." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001) (emphasis added) (citing 15 U.S.C. §§ 77p(b)–(c)).

SLUSA mandates that all cases falling within its purview are both removable to federal court, and <u>subject to automatic dismissal</u>. 15 U.S.C. §§ 77p(b)–(c); 15 U.S.C. §§ 78bb(f)(1)–(2). Under SLUSA, "no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (a) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (b) that the defendant used or employed any manipulative or deceptive

---

[1] SLUSA became effective on November 3, 1998 and it applies retroactively to conduct that occurred before its enactment. *W.R. Huff Asset Management Co., LLC v. Kohlberg Kravis Roberts & Co. L.P.*, 234 F.Supp.2d 1218, 1226 (N.D. Ala. 2002).

2294750.01
LIB: Charlotte

device in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b) and 78bb(f)(1). SLUSA effects a complete preemption of state law in this area. *See Franchise Tax Bd. of Cal v. Construction Laborers Vacation Trust for Southern Calif.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). If SLUSA applies to a claim, it is mandatory that the claim be dismissed. 15 U.S.C. §§ 77p(b)-(c); 15 U.S.C. §§ 78bb(f)(1)-(2).

SLUSA preempts a claim (making it subject to removal and automatic dismissal) where four conditions are met: (1) the underlying suit is a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; and (4) the plaintiff alleges "a misrepresentation or omission of material fact," or "a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." See 15 U.S.C. § 77p(b); 15 U.S.C. § 78bb(f)(1). The court should focus on the *substance* of the claim and not the Plaintiffs' characterization of the claim. *Denton v. H & R Block Fin. Advisors, Inc.*, 2001 WL 1183292, *3 (N.D. Ill. October 4, 2001). If each of these elements is present, a complaint should be dismissed. *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 231 (D.N.J. 2000). As demonstrated below, because Plaintiffs' claims meet each of these criteria, the Complaint should be dismissed.

**A.    Plaintiffs' Claims Constitute a Covered Class Action.**

This action is a "covered class action" within the meaning of 15 U.S.C. § 77p(f)(2)(A) and/or 15 U.S.C. § 78bb(f)(5)(B). A "covered class action" is defined under SLUSA as:

(i) any single lawsuit in which-

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

5

2294750.01
LIB: Charlotte

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

15 U.S.C. § 78bb(f)(5)(B). Plaintiffs are seeking the recovery of damages on behalf of themselves and an alleged class of approximately 300 other similarly situated Salomon Smith Barney clients, and Plaintiffs allege that questions of law and fact common to the members of the class predominate over any questions affecting only individual persons or members. Plaintiffs' suit is therefore a "covered class action."

**B.**    **Plaintiffs' Claims are Based on State Law.**

Next, Plaintiffs' claims are unquestionably based on state law. Plaintiffs have alleged the following North Carolina common law and statutory causes of action breach of fiduciary duty, negligence, negligent misrepresentation, breach of contract, aggravated breach of contract, and equitable estoppel, as well as a statutory claims under North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et. seq.*, and North Carolina's Racketeer Influenced and Corrupt Organizations Act, N.C.G.S. § 75D-1 *et. seq.* Claims such as the ones asserted by Plaintiffs routinely have been found to be preempted by SLUSA. *Behlen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 311 F.3d 1087, 1095 (11th Cir. 2002) (breach of contract, breach of fiduciary duty, and negligence claims properly dismissed).

**C.**    **Plaintiffs Allege Material Misrepresentations or Omissions of Material Fact, or a Manipulative Device or Contrivance.**

As reflected in the testimony of Hugh Q. Smith ("Smith"), one of the putative class representatives, the claims asserted by Plaintiffs are based on the allegation that misrepresentations or omissions of material fact were made by employees of Salomon Smith

2294750.01
LIB: Charlotte

Barney and that employees of Salomon Smith Barney used or employed a manipulative or deceptive device or contrivance.

On December 13 and 14, Defendants deposed Smith, one of the putative class representatives. During the course of that deposition, Smith testified both that (1) he was solicited to invest his retirement savings in mutual funds—covered securities—and (2) he is seeking to recover the investment losses that resulted from those representations in this suit. The relevant testimony is as follows:

> Q. Now, you understood that in order to get   you -- your words, get you 12 percent, Mr. Sweitzer had to invest your money, is that correct?  You have to say yes or no.
> A. Yes.
> Q. And you understood that Exhibit No. 302 and Exhibit No. 303 [2] were his recommendations about how he was going to invest your money to get 12 percent, is that right?
> A. Yes.
> Q. And that is, in fact, how Mr. Sweitzer did invest your money, isn't it?
> A. Yes.
> Q. And he invested your money over time using a method called dollar cost averaging, didn't he?
> A. I don't have a clue.
> Q. Did you ever review your statements to determine how Mr. Sweitzer actually invested your money once you delivered it to him?
> A. I looked at my statements to see that it was invested that way, yes.  I saw the funds on my 3 monthly statements, yes.
> Q. And he did invest the money as he recommended on Exhibit No.'s 302 and 303, didn't he?
> A. Yes, sir.
> Q. And you agreed with those investments, didn't you?
> A. Yes, sir.
> Q. And during this meeting on December 15th, Mr. Sweitzer had solicited you to invest in those funds, hadn't he, when he used this sheet?
> A. Yes.
> Q. And that solicitation was done in connection with Exhibit No. 301, which is the income distribution analysis at nine percent, that solicitation was done in connection with exhibit -- the second page of Exhibit No. 301, which is the six percent distribution sheet, and it was done in connection with Exhibit No.'s 302 and 303, wasn't it?

---

[2] The exhibits to Smith's deposition, Exhibits 301, an Income Distribution Analysis for Mr. Smith, and Exhibits 302 and 303, a Hypothetical Asset Allocation, are attached hereto collectively as Exhibit B.

2294750.01
LIB: Charlotte

A. When you say connection --
Q. He was using these documents when he solicited your investments, wasn't he?
A. Yes, sir, he was using these documents.
Q. And you understood the purpose of him using these documents was to solicit your investment in these funds, is that right?
A. Yes, sir.
Q. And that is, in fact, how you invested your funds, is that right?
A. Yes, sir.
Q. And the reason for this lawsuit is your complaining about the return that you received on these investments, is that right?
A. Yes, sir.
Q. You expected to get 12 percent, is that correct?
A. Yes, sir.
Q. And you didn't get it?
A. Yes, sir.
Q. And that's why you have sued Mr. Sweitzer and Salomon Smith Barney, is that right?
A. Yes, sir.

12/13/04 Deposition of Hugh Q. Smith ("Smith Depo."), pp. 114-16. Those excerpts from Smith's deposition are attached as Exhibit A.

In his testimony, Smith is referring to the income distribution analysis (Ex. 301), three versions of which were attached to the Complaint. In addition, he is reviewing a document entitled "hypothetical asset allocation" (Ex. Nos. 302 and 303) which showed the exact investments that Mr. Smith made. He testified that he received and reviewed the hypothetical asset allocation documents at the same time that he reviewed the income distribution analysis document. In an attempt to avoid SLUSA preemption, Plaintiffs did not attach any version of the hypothetical asset allocation to the Complaint or the Amended Complaint. Even though, as the Court previously noted, the income distribution analysis (Ex. 301) includes a disclaimer that that document alone does not constitute a solicitation for the purchase or sale of any securities, Smith testified that the income distribution analysis and the hypothetical asset allocation documents together were used for the purpose of soliciting an investment in specific mutual funds. That testimony unequivocally demonstrates that the Court's initial ruling, however, was made without

2294750.01
LIB: Charlotte

the benefit of a complete view of the salient facts. Based on his testimony, it is unmistakable that Smith purchased mutual funds based on Defendants' solicitations and now seeks to recover based in significant part on how those funds performed. Therefore, this case is a covered class action.

**D.** **Plaintiffs' Allegations are in Connection with the Purchase or Sale of Covered Securities.**

    **1.** **The statements about which Plaintiffs complain were made in connection with the purchase or sale of securities.**

The representations and advice about which Plaintiffs complain were made in connection with the purchase or sale of securities. Plaintiffs claim that "based on the advice . . . received from the defendants,"[3] they deposited assets with Salomon Smith Barney and opened accounts there, including "investment accounts" and tax-deferred accounts in which the procedure for making early withdrawals set forth in 26 U.S.C. § 72(t) was utilized. Amended Complt. ¶ 175. Plaintiffs allege that the performance of these accounts did not meet the projections given to Plaintiffs by Defendants. As Smith claimed during his deposition, the Plaintiffs assert that they did not receive the return which was represented to them when they were solicited to open their accounts and to purchase securities. At the same time that the alleged misrepresentation was made concerning the 12% rate of return, the Defendants are alleged to have presented Smith with the "Hypothetical Asset Allocation" which demonstrated how the "misleading" 12% return would be achieved through the purchase of covered securities. Mr. Smith alleges that he was solicited to purchase those covered securities, and his funds were in fact used to purchase covered securities.

---

[3] The allegations as to causation, and misrepresentation, for each of the 51 Plaintiffs are essentially the same and appear at Complt. ¶¶104-152.

2294750.01
LIB: Charlotte

SLUSA does not define the phrase "in connection with the purchase or sale of a covered security." The Supreme Court has not interpreted this phrase in the context of the SLUSA, but has interpreted the identical phrase as it appears in Rule 10b-5, which implements section 10(b) of the 1934 Act. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737- 38, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Congress intended the phrase "in connection with" to have the same meaning under the SLUSA that it has under Rule 10b-5, because the SLUSA was enacted as an amendment to the 1933 and 1934 Acts. *Riley*, 292 F.3d at 1342-43; *see also Green v. Ameritrade, Inc.*, 279 F.3d 590, 597 (8th Cir. 2002).

As the Supreme Court has stated, the "in connection with requirement should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *SEC v. Zandford*, 535 U.S. 813, 122 S. Ct. 1899, 1903, 153 L. Ed. 2d 1 (2002) (internal quotations omitted), quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L. Ed. 2d 741 (1972)[4]. The Supreme Court has stated that to satisfy the "in connection with" element, it is enough that a security buyer or seller suffered an injury as a result of deceptive practices *touching* its purchase or sale of securities. *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12-13, 92 S. Ct. 165 169, 30 L. Ed. 2d 128 (1971). In other words, "it is enough that the scheme to defraud and the sale of securities coincide." *Zandford*, 533 U.S. 813, 122 S. Ct. at 1904, 153 L. Ed. 2d 1. There is no requirement that the misrepresentation must concern the value of a particular security in order to fun afoul of the Act. *Zandford*, 535 U.S. 813, 122 S. Ct. at 1903, 153 L. Ed. 2d 1.

## 2.     Plaintiffs' claims involve covered securities

---

[4] The Fourth Circuit has previously taken the approach that only misrepresentations concerning the value of stock meet the "in connection with" requirement, See Hunt v. Robinson, 852 F. 2d 786, 787 (1988). In light of *SEC v. Zandford*, however, that interpretation should be rejected in this case.

2294750.01
LIB: Charlotte

The misrepresentations that Plaintiffs allege relate to the performance of covered securities. SLUSA adopts the definition of "covered security" given in 15 U.S.C. §77r(b).[5] 15 U.S.C. §§ 77p(f)(3) and 78bb(f)(5)(E). Securities listed on the NYSE, the NASDAQ National Market System, and mutual funds registered under the Investment Company Act of 1940 are among the securities within the class of "covered securities" under SLUSA.

Even though Plaintiffs focus on "financial consulting" and "financial planning" rather than their actual Salomon Smith Barney accounts, Mr. Smith's testimony demonstrates that the alleged misrepresentation concerned a covered security. As a result of Defendant's advice, he testified that he purchased various mutual funds, as detailed on the "Hypothetical Asset Allocation." See Exhibit A, and Exhibit 302 and 303 from Mr. Smith's deposition. Those mutual funds are covered securities within the meaning of SLUSA.

---

[5] 15 U.S.C. § 77r(b) Covered securities. For purposes of this section, the following are covered securities:

    (1)    Exclusive Federal registration of nationally traded securities. A security is a covered security if such security is –

    (A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the NASDAQ Stock Market (or any successor to such entities);

    (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or

    (C) is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).

    (2)    Exclusive Federal registration of investment companies. A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.).

2294750.01
LIB: Charlotte

## Conclusion

Plaintiffs' state law class action claims stem from misrepresentations concerning the purchase or sale of covered securities and as such are exactly the type of claims sought to be curtailed by the passage of SLUSA. Defendants respectfully requests that this Court dismiss Plaintiffs' class claims, and grant such other and further relief as is just and appropriate.

Respectfully submitted this 10th of January, 2005.

George C. Covington
N.C. State Bar No. 12370
John H. Culver III
N.C. State Bar No. 17849
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 331-7400
**Attorneys for Defendants**

OF COUNSEL:

KENNEDY COVINGTON LOBDELL & HICKMAN, L.L.P.
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone: (704) 331-7400
Facsimile: (704) 331-7598

12

2294750.01
LIB: Charlotte

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing **Memorandum of Law in Support of Motion to Dismiss** was served upon all other parties to this action by depositing a copy of the same in the United States mail, first-class postage prepaid, addressed as follows:

> Robert N. Hunter
> 101 West Friendly Avenue, Suite 500
> Greensboro, NC 27401
>
>
> Tracy Pride Stoneman
> 301 Snowcrest
> Westcliffe, CO 81252

This 10th day of January, 2005.

John H. Culver III

2294750.01
LIB: Charlotte

ATTACHMENT/EXHIBIT_____

1    STATE OF NORTH CAROLINA   GENERAL COURT OF JUSTICE

2    COUNTY OF GUILFORD              SUPERIOR COURT DIVISION

3                                         03 CVS 3555
     - - - - - - - - - - - - - - - - -X
4    VICTORIA T. MCPHATTER, ALEXIS     :
     M. SCHOENTHAL and HUGH Q. SMITH,  :
5    on behalf of themselves and       :
     others similarly situated,        :
6           Plaintiffs,                :
     v.                                :
7    JEFFREY LIN SWEITZER,             :
     JAMES MULLER, SR., SAMUEL BOYCE   :
8    RANKIN, RANDY MATZ, JOSEPH        :
     M. ZENTNER, JR., and SALOMON,     :
9    SMITH, BARNEY, INC., et al.,      :
            Defendants.                :
10   - - - - - - - - - - - - - - - - -X

11                      VOLUME I

12        Video deposition of HUGH Q. SMITH

13              (Taken by Defendants)

14           Charlotte, North Carolina

15              December 13, 2004

16

17   Reported by:   Andrea L. Nobrega

18                  Court Reporter

19                  Notary Public

20                                        COPY

21

22

23

24

25

Reported By: Andrea L. Nobrega
Huseby, Inc. Charlotte, 1230 West Morehead Street, Suite 408, Charlotte, NC, 28208, 704-333-9889

Case 1:05-cv-00027   Document 3   Filed 01/10/05   Page 15 of 25

```
 1    APPEARANCE OF COUNSEL:

 2    For the Plaintiffs:

 3         GILBERT J. (BERT) ANDIA, JR., Esq.

 4         Hunter, Higgins, Miles, Elam & Benjamin, PLLC

 5         101 West Friendly Avenue, Suite 500

 6         Greensboro, North Carolina  27401

 7         (336) 273-1600

 8         bandia@greensborolaw.com

 9

10    For the Defendants:

11         JOHN CULVER, Esq.

12         CORY HOHNBAUM, Esq.

13         Kennedy Covington Lobdell & Hickman, LLP

14         Hearst Tower, 47th Floor

15         214 North Tryon Street

16         Charlotte, North Carolina  28202

17

18    ALSO PRESENT:

19         MARTIN NOBREGA, Videographer

20         JEFFREY SWEITZER

21         MATTHEW MULLER

22

23

24

25
```

Reported By: Andrea L. Nobrega
Huseby, Inc. Charlotte, 1230 West Morehead Street, Suite 408, Charlotte, NC, 28208, 704-333-9889

Case 1:05-cv-00027   Document 3   Filed 01/10/05   Page 16 of 25

| | | |
|---|---|---|
| 1 | A.   I don't remember him telling about those | 11:46:01 |
| 2 | fees.  I'm not saying he didn't, but I don't | 11:46:03 |
| 3 | remember it. | 11:46:08 |
| 4 | Q.   You just don't remember it? | 11:46:08 |
| 5 | A.   No, sir. | 11:46:10 |
| 6 | Q.   Now, you understood that in order to get | 11:46:12 |
| 7 | you -- your words, get you 12 percent, Mr. Sweitzer | 11:46:16 |
| 8 | had to invest your money, is that correct?  You | 11:46:20 |
| 9 | have to say yes or no. | |
| 10 | A.   Yes. | 11:46:25 |
| 11 | Q.   And you understood that Exhibit No. 302 | 11:46:25 |
| 12 | and Exhibit No. 303 were his recommendations about | 11:46:30 |
| 13 | how he was going to invest your money to get 12 | 11:46:35 |
| 14 | percent, is that right? | 11:46:37 |
| 15 | A.   Yes. | 11:46:38 |
| 16 | Q.   And that is, in fact, how Mr. Sweitzer | 11:46:39 |
| 17 | did invest your money, isn't it? | 11:46:43 |
| 18 | A.   Yes. | 11:46:45 |
| 19 | Q.   And he invested your money over time | 11:46:47 |
| 20 | using a method called dollar cost averaging, didn't | 11:46:51 |
| 21 | he? | 11:46:55 |
| 22 | A.   I don't have a clue. | 11:46:55 |
| 23 | Q.   Did you ever review your statements to | 11:46:57 |
| 24 | determine how Mr. Sweitzer actually invested your | 11:47:00 |
| 25 | money once you delivered it to him? | 11:47:05 |

Reported By: Andrea L. Nobrega
Huseby, Inc. Charlotte, 1230 West Morehead Street, Suite 408, Charlotte, NC, 28208, 704-333-9889

Case 1:05-cv-00027   Document 3   Filed 01/10/05   Page 17 of 25

Page 115

1    A.   I looked at my statements to see that it   11:47:09

2  was invested that way, yes.  I saw the funds on my   11:47:12

3  monthly statements, yes.   11:47:22

4    Q.   And he did invest the money as he   11:47:22

5  recommended on Exhibit No.'s 302 and 303, didn't   11:47:22

6  he?   11:47:25

7    A.   Yes, sir.   11:47:25

8    Q.   And you agreed with those investments,   11:47:26

9  didn't you?   11:47:28

10    A.   Yes, sir.   11:47:29

11    Q.   And during this meeting on December 15th,   11:47:32

12  Mr. Sweitzer had solicited you to invest in those   11:47:35

13  funds, hadn't he, when he used this sheet?   11:47:38

14    A.   Yes.   11:47:41

15    Q.   And that solicitation was done in   11:47:43

16  connection with Exhibit No. 301, which is the   11:47:45

17  income distribution analysis at nine percent, that   11:47:50

18  solicitation was done in connection with exhibit --   11:47:54

19  the second page of Exhibit No. 301, which is the   11:47:58

20  six percent distribution sheet, and it was done in   11:48:01

21  connection with Exhibit No.'s 302 and 303, wasn't   11:48:04

22  it?   11:48:08

23    A.   When you say connection --   11:48:11

24    Q.   He was using these documents when he   11:48:13

25  solicited your investments, wasn't he?   11:48:15

Reported By: Andrea L. Nobrega
Huseby, Inc. Charlotte, 1230 West Morehead Street, Suite 408, Charlotte, NC, 28208, 704-333-9889

Case 1:05-cv-00027  Document 3  Filed 01/10/05  Page 18 of 25

1     A.    Yes, sir, he was using these documents.    11:48:18

2     Q.    And you understood the purpose of him    11:48:20

3 using these documents was to solicit your    11:48:22

4 investment in these funds, is that right?    11:48:25

5     A.    Yes, sir.    11:48:28

6     Q.    And that is, in fact, how you invested    11:48:28

7 your funds, is that right?    11:48:30

8     A.    Yes, sir.    11:48:31

9     Q.    And the reason for this lawsuit is your    11:48:35

10 complaining about the return that you received on    11:48:38

11 these investments, is that right?    11:48:41

12     A.    Yes, sir.    11:48:42

13     Q.    You expected to get 12 percent, is that    11:48:43

14 correct?    11:48:45

15     A.    Yes, sir.    11:48:46

16     Q.    And you didn't get it?    11:48:46

17     A.    Yes, sir.    11:48:47

18     Q.    And that's why you have sued Mr. Sweitzer    11:48:48

19 and Salomon Smith Barney, is that right?    11:48:49

20     A.    Yes, sir.    11:48:51

21     Q.    And if you had, in fact, gotten 12    11:48:52

22 percent, you would not have brought this lawsuit,    11:48:54

23 would you?    11:48:57

24     A.    There is other things involved other than    11:49:00

25 this investment -- in this lawsuit for me. I'm    11:49:03

Reported By: Andrea L. Nobrega
Huseby, Inc. Charlotte, 1230 West Morehead Street, Suite 408, Charlotte, NC, 28208, 704-333-9889

Case 1:05-cv-00027   Document 3   Filed 01/10/05   Page 19 of 25

1            CERTIFICATE OF REPORTER

2

3   STATE OF NORTH CAROLINA)

4   COUNTY OF MECKLENBURG   )

5         I, Andrea L. Nobrega, the officer before

6   whom the foregoing deposition was taken, do hereby

7   certify that the witness whose testimony appears in

8   the foregoing deposition was duly sworn by me; that

9   the testimony of said witness was taken by me to

10   the best of my ability and thereafter reduced to

11   typewriting under my direction; that I am neither

12   counsel for, related to, nor employed by any of the

13   parties to the action in which this deposition was

14   taken, and further that I am not a relative or

15   employee of any attorney or counsel employed by the

16   parties thereto, nor financially or otherwise

17   interested in the outcome of the action.

18

19           ANDREA L. NOBREGA

20          Court Reporter and Notary

21          Public in and for North

22          Carolina.

23

24

25   My commission expires: 11-25-06

ATTACHMENT/EXHIBIT_____

**1. Client Profile**

**Hugh and Linda Smith**

| | |
|---|---|
| **Date** | 1999 |
| **Age** | 51 |

*The information set forth was obtained from sources we believe reliable, but no current guarantee of its accuracy. Neither the information nor any opinion expressed constitutes a solicitation by us of the purchase or sale of any securities.*

**2. Asset Profile**

SALOMON SMITH BARNEY A member of citigroup *7/2/00*

| | | |
|---|---|---|
| **Asset Value** | $626,000 | |
| **Asset Growth Rate** | 12% | *12%* |
| **Income Yield** | 9.0% | *8%* |
| **Tax Bracket** | 20% | *20%* |

*$300/4*

**3. Income Distribution Analysis**

| Age | Date | Asset Value | Earnings | Payout | Net Income |
|---|---|---|---|---|---|
| 51 | 1999 | $626,000 | $75,120 | $45,072 | $36,058 |
| 52 | 2000 | $656,048 | $78,726 | $45,072 | $36,058 |
| 53 | 2001 | $689,702 | $82,764 | $45,072 | $36,058 |
| 54 | 2002 | $727,394 | $87,287 | $45,072 | $36,058 |
| 55 | 2003 | $769,609 | $92,353 | $45,072 | $36,058 |
| 56 | 2004 | $816,890 | $98,027 | $45,072 | $36,058 |
| 57 | 2005 | $869,845 | $104,381 | $45,072 | $36,058 |
| 58 | 2006 | $929,155 | $111,499 | $45,072 | $36,058 |
| 59 | 2007 | $995,581 | $119,470 | $45,072 | $36,058 |
| 60 | 2008 | $1,069,979 | $128,397 | $96,298 | $77,038 |
| 61 | 2009 | $1,102,078 | $132,249 | $99,187 | $79,350 |
| 62 | 2010 | $1,135,141 | $136,217 | $102,163 | $81,730 |
| 63 | 2011 | $1,169,195 | $140,303 | $105,228 | $84,182 |
| 64 | 2012 | $1,204,271 | $144,512 | $108,384 | $86,707 |
| 65 | 2013 | $1,240,399 | $148,848 | $111,636 | $89,309 |
| 66 | 2014 | $1,277,611 | $153,313 | $114,985 | $91,988 |
| 67 | 2015 | $1,315,939 | $157,913 | $118,435 | $94,748 |
| 68 | 2016 | $1,355,417 | $162,650 | $121,988 | $97,590 |
| 69 | 2017 | $1,396,080 | $167,530 | $125,647 | $100,518 |
| 70 | 2018 | $1,437,962 | $172,555 | $129,417 | $103,533 |
| 71 | 2019 | $1,481,101 | $177,732 | $133,299 | $106,639 |
| 72 | 2020 | $1,525,534 | $183,064 | $137,298 | $109,838 |
| 73 | 2021 | $1,571,300 | $188,556 | $141,417 | $113,134 |
| 74 | 2022 | $1,618,439 | $194,213 | $145,660 | $116,528 |
| 75 | 2023 | $1,666,992 | $200,039 | $150,029 | $120,023 |
| 76 | 2024 | $1,717,002 | $206,040 | $154,530 | $123,624 |
| 77 | 2025 | $1,768,512 | $212,221 | $159,166 | $127,333 |
| 78 | 2026 | $1,821,567 | $218,588 | $163,941 | $131,153 |
| 79 | 2027 | $1,876,215 | $225,146 | $168,859 | $135,087 |
| 80 | 2028 | $1,932,501 | $231,900 | $173,925 | $139,140 |
| 81 | 2029 | $1,990,476 | $238,857 | $179,143 | $143,314 |
| | | **Totals:** | **$4,770,472** | | **$2,677,026** |



EXHIBIT
301

**1. Client Profile**

**Hugh and Linda Smith**

| Date | 1999 |
|------|------|
| Age | 51 |

The information set forth was obtained from sources we believe reliable, but we cannot guarantee its accuracy. Neither the information nor any opinion expressed constitutes a solicitation by us of the purchase or sale of any securities.

**2. Asset Profile**

SALOMON SMITH BARNEY  A member of citigroup

| | |
|------|------|
| **Asset Value** | **$626,000** |
| **Asset Growth Rate** | **12%** |
| **Income Yield** | **6.0%** |
| **Tax Bracket** | **20%** |

**3. Income Distribution Analysis**

| Age | Date | Asset Value | Earnings | Payout | Net Income |
|-----|------|-------------|----------|--------|------------|
| 51 | 1999 | $626,000 | $75,120 | $37,500 | $30,000 |
| 52 | 2000 | $663,620 | $79,634 | $37,500 | $30,000 |
| 53 | 2001 | $705,754 | $84,691 | $37,500 | $30,000 |
| 54 | 2002 | $752,945 | $90,353 | $37,500 | $30,000 |
| 55 | 2003 | $805,798 | $96,696 | $37,500 | $30,000 |
| 56 | 2004 | $864,994 | $103,799 | $37,500 | $30,000 |
| 57 | 2005 | $931,293 | $111,755 | $37,500 | $30,000 |
| 58 | 2006 | $1,005,549 | $120,666 | $37,500 | $30,000 |
| 59 | 2007 | $1,088,714 | $130,646 | $37,500 | $30,000 |
| 60 | 2008 | $1,181,860 | $141,823 | $70,912 | $56,729 |
| 61 | 2009 | $1,252,772 | $150,333 | $75,166 | $60,133 |
| 62 | 2010 | $1,327,938 | $159,353 | $79,676 | $63,741 |
| 63 | 2011 | $1,407,614 | $168,914 | $84,457 | $67,565 |
| 64 | 2012 | $1,492,071 | $179,049 | $89,524 | $71,619 |
| 65 | 2013 | $1,581,596 | $189,791 | $94,896 | $75,917 |
| 66 | 2014 | $1,676,491 | $201,179 | $100,589 | $80,472 |
| 67 | 2015 | $1,777,081 | $213,250 | $106,625 | $85,300 |
| 68 | 2016 | $1,883,706 | $226,045 | $113,022 | $90,418 |
| 69 | 2017 | $1,996,728 | $239,607 | $119,804 | $95,843 |
| 70 | 2018 | $2,116,532 | $253,984 | $126,992 | $101,594 |
| 71 | 2019 | $2,243,523 | $269,223 | $134,611 | $107,689 |
| 72 | 2020 | $2,378,135 | $285,376 | $142,688 | $114,150 |
| 73 | 2021 | $2,520,823 | $302,499 | $151,249 | $121,000 |
| 74 | 2022 | $2,672,072 | $320,649 | $160,324 | $128,259 |
| 75 | 2023 | $2,832,397 | $339,888 | $169,944 | $135,955 |
| 76 | 2024 | $3,002,341 | $360,281 | $180,140 | $144,112 |
| 77 | 2025 | $3,182,481 | $381,898 | $190,949 | $152,759 |
| 78 | 2026 | $3,373,430 | $404,812 | $202,406 | $161,925 |
| 79 | 2027 | $3,575,836 | $429,100 | $214,550 | $171,640 |
| 80 | 2028 | $3,790,386 | $454,846 | $227,423 | $181,939 |
| 81 | 2029 | $4,017,809 | $482,137 | $241,069 | $192,855 |
| | **Totals:** | | **$7,047,395** | | **$2,731,614** |

## SALOMON SMITH BARNEY
#### A member of citigroup

December 15, 1999

## Hugh and Linda Smith

| Asset Distribution Suggestion: | |
|---|---|
| Income Assets: | 25% |
| Growth Assets: | 75% |

# Hypothetical Asset Allocation

| | Investment | Amount | % Value |
|---|---|---|---|
| 1 | Managed Balanced Account | $150,000 | 23.96% |
| 2 | Aim Balanced | $36,222 | 5.79% |
| 3 | Aim Blue Chip | $36,222 | 5.79% |
| 4 | Aim Value | $36,222 | 5.79% |
| 5 | Alliance Growth | $36,222 | 5.79% |
| 6 | Alliance Growth & Income | $36,222 | 5.79% |
| 7 | MFS Capital Opportunities | $36,222 | 5.79% |
| 8 | MFS Massachusetts Investor | $36,222 | 5.79% |
| 9 | Oppenheimer Main Street Gro & Inc | $36,222 | 5.79% |
| 10 | Oppenheimer Quest Balanced Value | $36,222 | 5.79% |
| 11 | Managed Growth Account | $150,002 | 23.96% |
| | **Totals** | **$626,000** | **100%** |

# Asset Allocation Diagram



EXHIBIT
30.2

# SALOMON SMITH BARNEY
### A member of citigroup

December 15, 1999

## Hugh and Linda Smith

| Asset Distribution Suggestion: | |
|---|---|
| Income Assets: | 25% |
| Growth Assets: | 75% |

# Hypothetical Asset Allocation

| | **Investment** | **Amount** | **% Value** |
|---|---|---|---|
| 1 | Managed Balanced Account  2.1% | $150,000 | 23.96% |
| 2 | Aim Balanced | $36,222 | 5.79% |
| 3 | Aim Blue Chip | $36,222 | 5.79% |
| 4 | Aim Value | $36,222 | 5.79% |
| 5 | Alliance Growth | $36,222 | 5.79% |
| 6 | Alliance Growth & Income | $36,222 | 5.79% |
| 7 | MFS Capital Opportunities | $36,222 | 5.79% |
| 8 | MFS Massachusetts Investor | $36,222 | 5.79% |
| 9 | Oppenheimer Main Street Gro & Inc | $36,222 | 5.79% |
| 10 | Oppenheimer Quest Balanced Value | $36,222 | 5.79% |
| 11 | Managed Growth Account  2.1% | $150,002 | 23.96% |
| | **Totals** | **$626,000** | **100%** |

# Asset Allocation Diagram





EXHIBIT
303

SSB017128