IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


VICTORIA T. McPHATTER; ALEXIS M.          )
SCHOENTHAL; and HUGH Q. SMITH, on         )
behalf of themselves and others           )
similarly situated, including but         )   CIVIL NO. 1:05CV00027
not limited to:  JAMES MICHAEL            )
MCSWAIN; DEBORAH M. MICHALIC;             )
SHARON ALESIA MILLER; BARBARA P.          )
MOORE; SHIRLEY J. MOORE; JOHN             )
DENNIS MORGAN; BETTIE H. NOBLITT;         )
DIANE WILSON SHYTLE; LINDA T.             )
SMART; CAROL JEAN NASH SPENCER;           )
MARY STATEN SPEARS; THELMA L.             )
HARDIN; MARSHA ROLLINS MCKEE;             )
PATRICIA ANN HANNA; REBECCA M.            )
HOPKINS; BARBARA R. HOUSTON;              )
CORA L. HUDSON; MARY L. HUNTLEY;          )
VIVIAN B. REICHART; LAVONNE M.            )
THOMPSON; ALVIN LEWIS UNDERDOWN;          )
MARION C. ALEXANDER; KAYE GAMBLE          )
FALLS, and Husband, ALBERT HERMAN         )
FALLS; NANCY B. FOX; WILLIAM ALONZO)
GHENT; BETTY B. GILBERT; J. W.            )
KAYLOR; JANICE B. CARTER; LINDA B.        )
CHITWOOD; CAROLYN B. EVANS;               )
WALDENE C. BERRY; ELAINE D. BLACK;        )
BRENDA Y. BURGIN; MYRA G. GRAHAM;         )
LINDA D. GRIFFIN; DENNIS R.               )
HAMRICK; FAYE J. ERTZBERGER;              )
JOHNNY C. PATTERSON; BRENDA M.            )
PERRY; DELOSIE P. WALKER; JUDITH S.)
LYTLE; ALLISON GRANT; LUCINDA B.          )
GARDIN; VERA P. CLIFTON; DEBORAH          )
DAVIS; KATHRYN WHITE; LYNDA S.            )
MINTZ; GABRIEL F. EBERLE; CAROLYN         )
FRANCK; JACQUELINE BLACK;                 )
PHYLLIS J. JONES; JOYCE F.                )
PRESSLEY; NELLIE J. TYSON; and            )
SANDRA A. MOORE; BRENDA L. MUNDAY,        )
                                          )
               Plaintiffs,                )

```
              v.                    )
                                    )
JEFFREY LIN SWEITZER; MATTHEW JAMES )
MULLER, SR.; SAMUEL BOYCE RANKIN;   )
RANDY MATZ; JOSEPH M. ZENTNER, JR.; )
AND OTHER DEFENDANTS TO BE NAMED;   )
and SALOMON, SMITH, BARNEY, INC.,   )
                                    )
              Defendants.           )
```

## MEMORANDUM OPINION

BULLOCK, District Judge

This action was originally filed in the General Court of
Justice, Superior Court Division, Guilford County, North Carolina
on February 10, 2003.[1]  Defendants removed the case to this court
for the first time on February 21, 2003.[2]  This court remanded
pursuant to its order and memorandum opinion dated September 8,
2003.  Defendants filed a second notice of removal on January 10,
2005.  The case is currently before this court on Plaintiffs'
second motion to remand and motion for costs and expenses
pursuant to 28 U.S.C. § 1447(c).[3]  For the following reasons, the

---

[1] Case No. 03CVS3555.

[2] Federal docket number 1:03CV00170.

[3] Also pending are Defendants' Motion to Dismiss (filed
January 10, 2005) and Plaintiffs' Motion to Defer Consideration
of Motion to Dismiss, Motion to Strike, Motion to Supplement
Opposition to Motion to Dismiss, and Motion for Leave to Amend
                                              (continued...)

court will grant Plaintiffs' motion to remand and motion for
costs and expenses.

FACTS

Plaintiffs Victoria T. McPhatter, Alexis M. Schoenthal, and
Hugh Q. Smith, on behalf of themselves and others similarly
situated, including but not limited to those persons named in the
caption (collectively "Plaintiffs"), filed this class action suit
on February 10, 2003, in Guilford County Superior Court alleging
various state law causes of action.  Plaintiffs are former
employees and/or spouses of former employees of Bell South.
Plaintiffs allege that Defendants induced them to retire early
from Bell South, take a lump sum payout option, and entrust their
lump sum retirement funds to Defendants, who represented
themselves to be competent and trustworthy financial advisors.
Plaintiffs have not yet been certified as a class.

Defendants Salomon Smith Barney, Inc.[4] and its employees,
Jeffrey Lin Sweitzer, Matthew James Muller, Sr., Samuel Boyce
Rankin, Randy Matz, and Joseph M. Zentner, Jr. (collectively
"Defendants") removed the case to this court for the first time

---

[3](...continued)
Complaint (all filed March 24, 2005).  The decision to remand
renders those motions moot.

[4] Salomon Smith Barney is now Citigroup Global Markets, Inc.

3

on February 21, 2003, pursuant to 28 U.S.C. §§ 1441 and 1446(b).
Defendants argued that Plaintiffs' state law claims were
preempted by the Securities Litigation Uniform Standards Act of
1998 ("SLUSA"), 15 U.S.C. §§ 77p and/or 78bb(f),[5] which required
the action to be heard in federal court.  Plaintiffs moved to
remand, arguing that their complaint alleged only state law
claims and, as such, was not preempted by SLUSA.  After briefing
and oral argument, this court found that because Plaintiffs'
allegations were "not in connection with the purchase or sale of
covered securities," SLUSA did not apply.  Accordingly, this
court granted Plaintiffs' motion and remanded the action to state
court by order dated September 8, 2003.

     Since remand, the case has proceeded in state court.  The
parties have conducted extensive discovery, including written
discovery, the exchange of a significant number of documents, and
depositions of each of the five individual Defendants and twelve
named Plaintiffs, including all three of the putative class
representatives.

     On January 10, 2005, Defendants filed a second notice of
removal, again asserting preemption under SLUSA ("Second
Removal").  Defendants seek to remove this second time pursuant
to the portion of 28 U.S.C. § 1446(b) that allows successive
removal "within thirty days after receipt by the defendant,

---

     [5] These two sections of SLUSA are functionally identical.

4

through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The "other paper" on which Defendants' Second Removal is based is neither a pleading nor a motion; it is the transcript of the deposition of Hugh Q. Smith, a putative class representative, taken on December 13 and 14, 2004 (hereinafter "the Smith Deposition" or "Smith's Deposition"). Defendants contend that the Smith Deposition contains "newly discovered facts" and, as such, is the first "paper" from which they could ascertain that the case has become removable under SLUSA.

Smith's Deposition was the ninth of twelve depositions taken by Defendants. Plaintiffs argue that it was not unique. They point to substantially similar information that was provided in several of the depositions Defendants took before Smith's Deposition. Plaintiffs also point out that affidavits they served in the Spring of 2004 contain similar information. Therefore, Plaintiffs argue, Defendants' Second Removal was untimely and defective, as not within thirty days of when grounds for removal could first be ascertained. In the alternative to their timeliness argument, Plaintiffs argue that even if the Second Removal was timely, the case should be remanded because Smith's Deposition does not establish that SLUSA applies.

5

Finally, Plaintiffs seek reimbursement of their just costs and expenses incurred as a result of the Second Removal.

For the reasons set forth below, the court finds that the Second Removal was untimely. Further consideration of the parties' more substantive arguments is unnecessary because defective removal mandates immediate remand pursuant to 28 U.S.C. § 1447(c). The court will award Plaintiffs their just costs and expenses as provided by § 1447(c).

DISCUSSION

I. <u>Remand is Required Because Removal Was Untimely</u>

28 U.S.C. § 1446(b) prescribes the time limits for removing an action where the initial complaint does not render the case removable. It provides that notice of removal must be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The standard by which this court must evaluate Defendants' Second Removal was set out by the Fourth Circuit in <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994):

> The burden of establishing federal jurisdiction is placed upon the party seeking removal. <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92 (1921). Because removal jurisdiction raises significant federalism

6

> concerns, we must strictly construe removal
> jurisdiction.  <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313
> U.S. 100 (1941).  If federal jurisdiction is doubtful,
> a remand is necessary.  <u>In re Business Men's Assur. Co.
> of America</u>, 992 F.2d 181, 183 (8th Cir. 1993); <u>Cheshire
> v. Coca-Cola Bottling Affiliated, Inc.</u>, 758 F. Supp.
> 1098, 1102 (D.S.C. 1990).

Thus, the burden is on Defendants to establish that they filed

their Second Removal in a timely manner.  If there are doubts,

remand is required pursuant to 28 U.S.C. § 1447(c).  <u>Accord

Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d 720, 723

(5th Cir. 2002) ("Any ambiguities are construed against removal

because the removal statute should be strictly construed in favor

of remand.").

    Defendants seek to establish federal jurisdiction on the

basis of preemption under SLUSA, which requires removal of all

class actions based on state law if they allege "(1) an untrue

statement or omission of a material fact in connection with the

purchase or sale of a covered security; or (2) that the defendant

used or employed any manipulative or deceptive device or

contrivance in connection with the purchase or sale of a covered

security."  15 U.S.C. §§ 77p(b),(c) & 78bb(f)(1),(2) (2002).

Thus, Defendants must show that the Smith Deposition was the

first paper to establish the applicability of SLUSA, such that it

(and no previous "other paper"), triggered the start of

Defendants' thirty days to remove under § 1446(b).[6]  Any delay
beyond the thirty-day window cannot be overlooked.  <u>Cline v.
Fairbanks Capital Corp.</u>, 2004 WL 1146694, at *3 (M.D.N.C. 2004)
(noting that because time limits for removal must be strictly
observed and court is without discretion to overlook such
procedural defects, case must be remanded even though individual
defendants had removed on time and corporate defendants' notice
of removal was only seven days late).

        In order to meet their burden, Defendants seek to assign
critical importance to a certain document called the Hypothetical
Asset Allocation.  The Hypothetical Asset Allocation was not
before this court at the time of the first removal and remand in
2003.  Thus, Defendants seek to use it as the basis for their
second removal, arguing that the Hypothetical Asset Allocation
"demonstrates <u>on its face</u> that the misrepresentations at issue in
this case were made in connection with the purchase and sale of
covered securities."  (Defs.' Resp. in Opp'n to Pls.' Mot. to
Remand at 4)(emphasis added).

        This argument reveals the first of Defendants' timeliness
problems.  If the Hypothetical Asset Allocation itself is the key

---

[6] In the interest of evaluating the timeliness of
Defendants' Second Removal, the court assumes, without finding,
that the testimony contained in the Smith Deposition is
sufficient to establish grounds for removal under SLUSA.
However, as discussed in footnote 15, <u>infra</u>, the court is not
persuaded that the Smith Deposition is, in fact, sufficient.

to establishing SLUSA preemption (which the court does not here decide), Defendants were required to remove within thirty days of receipt of that paper. The Hypothetical Asset Allocation was created by Defendants and was in Defendants' possession even before Plaintiffs filed suit. Moreover, the Hypothetical Asset Allocation was attached as an exhibit to six of the affidavits Plaintiffs served in the Spring of 2004. (<u>See</u> Affs. of Smith, McPhatter, Burgin, Falls, Hamrick, and McSwain.) If it demonstrated a basis for removal on its face, Defendants could and should have removed the case, if at all, in 2004.

Separate from the Hypothetical Asset Allocation itself, Defendants also seek to assign critical importance to the portion of Smith's Deposition wherein he discusses the Hypothetical Asset Allocation. Their argument is that even though Plaintiffs produced the Hypothetical Asset Allocation long before the Smith Deposition, Smith's testimony about that document was the trigger for removal under § 1446(b) because it provided the necessary explanation about the "connection" between the Hypothetical Asset Allocation and the Plaintiffs' claims. Defendants focus on Smith's testimony that Defendant Sweitzer used <u>both</u> the Hypothetical Asset Allocation <u>and</u> the Income Distribution Analysis[7], to show Smith the "funds" in which he would invest

_____

[7] The Income Distribution Analysis document is another of the financial planning documents prepared and used by Defendants
(continued...)

9

Smith's money in order to generate a twelve percent return.
(Smith Dep. 108-110.)  Defendants highlight that Smith agreed
with defense counsel's statement that the two documents "work
together" to show Defendant Sweitzer's financial plan for Smith.
(Smith Dep. 109:21-23.)  From this testimony, Defendants contend
that Smith was the first Plaintiff to admit that "he understood
that the purpose for Mr. Sweitzer using these documents was to
solicit his investment in the mutual funds that he ultimately
purchased, and that his damages were caused in part by the poor
performance of those covered securities."  (Defs.' Resp. in Opp'n
to Pls.' Mot. to Remand, 6-7.)

Defendants also point to a later portion of the Smith
Deposition, showing Smith's answer of "Yes" or "Yes, sir" to the
following leading questions by counsel for Defendants:

- "Now, you understood that in order to get you -- your words, get you 12 percent, Mr. Sweitzer had to invest your money, is that correct?  You have to say yes or no."

---

[7](...continued)
in their presentations to Plaintiffs.  The document is sometimes
referred to by the Plaintiffs as the Income Analysis sheet, the
Income Projection document, and/or the projection chart.  A
generalized version of the Income Distribution Analysis is
attached as Exhibit B to the Amended Complaint.  Individualized
versions of the document, pertaining to specific Plaintiffs'
financial situations, have been exchanged and were used during
the depositions.

- "And you understood that Exhibit No. 302 and Exhibit No. 303[8] were his recommendations about how he was going to invest your money to get 12 percent, is that right?"

- "And that is, in fact, how Mr. Sweitzer did invest your money, isn't it?"

- "And during this meeting on December 15[th], Mr. Sweitzer had solicited you to invest in those funds, hadn't he, when he used this sheet?"

- "[Mr. Sweitzer] was using these documents when he solicited your investments, wasn't he?"

- "And you understood the purpose of him using these documents was to solicit your investment in these funds, is that right?"

- "And the reason for this lawsuit is your complaining about the return that you received on these investments, is that right?"

- "You expected to get 12 percent, is that correct?"

- "And you didn't get it?"

- "And that's why you have sued Mr. Sweitzer and Salomon Smith Barney, is that right?"

(Smith Dep., Vol. I, 114-16, Dec. 13, 2004; Defs.' Resp. in Opp'n to Pls.' Mot. to Remand, 17-19.)

Defense counsel now seeks to capitalize on his leading questioning by arguing that "[b]ased on [Smith's Deposition], it is unmistakable that Mr. Smith purchased mutual funds based on Defendants' solicitations and now seeks to recover based in significant part on how those funds performed." (Second Notice of Removal ¶ 11.) Defendants also assert that the Smith

---

[8] Exhibits 301-303 are the Hypothetical Asset Allocation and the Income Distribution Analysis.

Deposition provides the first, direct refutation of this court's
conclusion (in its September 8, 2003 memorandum opinion), that
"at the time of Defendants' alleged misrepresentations it was
equally possible that Defendants would invest in rental property
or other assets as it was that Defendants would invest in covered
securities." Defendants conclude, therefore, that the Smith
Deposition was their first notice that "Plaintiffs asserted
claims that constitute a 'covered class action' within the
meaning of SLUSA." (Second Notice of Removal ¶ 12.)

To determine whether Smith's Deposition deserves the weight
which Defendants seek to give it, this court compared it to the
affidavits served and depositions taken prior to Smith's
Deposition. After extensive review of the record, the court
concludes that Plaintiffs supplied substantially similar papers
to Defendants more than thirty days before the Second Removal.
Accordingly, Defendants' reliance upon the Smith Deposition is
misplaced and the Second Removal was untimely.

In February, March, and May of 2004, before any depositions
were taken, Defendants were in receipt of affidavits from several
named Plaintiffs, including putative class representatives,
stating that they understood their money would be, and in fact
was, invested in securities. (Burgin Aff. ¶¶ 8, 14; Falls Aff.
¶¶ 9, 11, 13; Hamrick Aff. ¶¶ 8, 10, 13-15; McSwain Aff. ¶¶ 8, 9,
13-15; McPhatter Aff. ¶¶ 16, 19, 29; Schoenthal Aff. ¶ 21.)

12

Plaintiffs did not ignore or hide the Hypothetical Asset

Allocation. On the contrary, it was attached to six of the

affidavits, including Smith's and McPhatter's. In the affidavits

that specifically discussed the Hypothetical Asset Allocation,

Plaintiffs made clear that Defendants had provided the

Hypothetical Asset Allocation to Plaintiffs, to show Plaintiffs

how their retirement funds would be invested and diversified over

ten to twelve different mutual funds. (Burgin Aff. ¶ 9; Falls

Aff. ¶ 9; Hamrick Aff. ¶ 10; McSwain Aff. ¶ 9.) Affidavits from

plaintiffs constitute "other paper" under § 1446(b) and, as such,

can trigger the thirty days to remove under § 1446(b).[9] Parker

v. County of Oxford, 224 F. Supp. 2d 292, 294 (D. Me. 2002)

("'Other paper' that has signified the newfound removability of a

_____

[9] Indeed, an affidavit is likely more-reliable evidence of a
plaintiff's position than testimony elicited by defense counsel's
leading questions during a deposition. The Fourth Circuit has
not ruled on the specific issue of whether a plaintiff's
affidavit constitutes "other paper" for purposes of removal.
However, the Fourth Circuit and district courts within this
circuit have emphasized that the thirty-day window begins to run
upon receipt of any paper which shows on its face grounds for
removal. Lovern v. GMC, 121 F.3d 160, 162 (4th Cir. 1997)
(removal was timely when filed within thirty days of receipt of a
police report or plaintiff's answers to interrogatories when
grounds for removal were "apparent within the four corners of the
. . . paper"); Riverdale Baptist Church v. Certainteed Corp., 349
F. Supp. 2d 943, 953 (D. Md. 2004) (holding that deposition
exhibits can be "other paper" for removal under § 1446(b)); Link
Telecomms., Inc. v. Sapperstein, 119 F. Supp. 2d 536, 542 (D. Md.
2000) ("Many types of documents have been deemed 'other paper'
under § 1446(b)."); Wingfield v. Franklin Life Ins. Co., 41 F.
Supp. 2d 594, 598 (E.D. Va. 1999) (defendant must file removal
within thirty days of receiving "any paper first revealing
grounds for removal").

case and initiated the thirty-day period includes . . .
affidavits, . . . answers to interrogatories, . . . and documents
produced in discovery."); <u>Jamison v. Kerr-McGee Corp.</u>, 151
F. Supp. 2d 742, 745 (S.D. Miss. 2001) (affidavit of defense
counsel's paralegal starts running of thirty days to remove).

In addition to the affidavits, Defendants also had the
depositions of several other Plaintiffs, including putative class
representative Victoria T. McPhatter, before they deposed Smith.
At least five of those Plaintiffs gave testimony that is
substantially similar to Smith's.  Indeed, Defendants used the
Hypothetical Asset Allocation as an exhibit during the deposition
of McPhatter, who testified that she had seen the Hypothetical
Asset Allocation and that it was "part of [the] literature"
Defendants gave her during their meeting.  (McPhatter Dep.,
Vol. III, 347:1-8, Nov. 11, 2004.)[10]  McPhatter also testified
that she understood her money would be invested, at least in
part, in mutual funds.  (<u>Id</u>. 349-51.)[11]  Another Plaintiff,

_____

[10] McPhatter also testified about being impressed by
documents the Defendant provided which bore the Morningstar logo
and listed various mutual funds, rates of return, and investment
approaches.  (<u>Id</u>. at 349:4-25, 350-51.)  Those papers were also
included as exhibits to McPhatter's affidavit.

[11] The Plaintiffs who were deposed before Smith were not
subject to the same intensity of leading questioning on the
issues relating to SLUSA preemption.  Indeed, in McPhatter's
deposition, defense counsel used leading questions to try to
establish that she did <u>not</u> recall seeing the Hypothetical Asset
Allocation.  When McPhatter insisted that she had seen it, and
                                                    (continued...)

14

Johnny L. Patterson, testified that he had reviewed both the
Hypothetical Asset Allocation and the Income Distribution
Analysis at his meeting with Defendant Muller.  (Patterson Dep.
248:23-25, 249:1-13, 256:1-13, Nov. 15, 2004.)  Patterson said he
understood the papers, which were exhibits in his deposition,
showed how Defendant Muller proposed to invest his money.  (Id.)
Plaintiffs Dennis R. Hamrick, Albert H. Falls and Mary S. Spears
all gave similar testimony and the Hypothetical Asset Allocation
was an exhibit in their depositions as well.  (Hamrick Dep.
97-110, Nov. 17, 2004; Falls Dep. 169-184, Nov. 22, 2004; Spears
Dep. 75-80, Nov. 29, 2004.)

---

[11](...continued)
recalled that it was "part of this literature," defense counsel
did not ask if she meant it "worked together" with the Income
Distribution Analysis.  As such, the deposition testimony of
other Plaintiffs is not as helpful to Defendants in making their
preemption argument.  However, Defendants cannot complain about
that difference and thereby seek to capitalize on both their
aggressive deposition tactics during the Smith Deposition and
their less aggressive approach taken with previously-deposed
Plaintiffs.  Moreover, to the extent the other Plaintiffs did not
testify in as much detail as Smith did, Defendants cannot claim
ignorance.  Defense counsel had their affidavits, with the
Hypothetical Asset Allocation attached, and could have asked the
previously-deposed Plaintiffs the same leading questions he asked
Smith.  "[A] number of courts have held that a defendant has an
affirmative duty to make reasonable inquiry to ascertain the
existence of federal jurisdiction and pursue 'clues' of potential
federal jurisdiction as soon as they are uncovered."  Haber v.
Chrysler Corp., 958 F. Supp. 321, 326 (E.D. Mich. 1997).  See
also Riverdale Baptist Church v. Certainteed Corp., 349
F. Supp. 2d 943, 953 (D. Md. 2004) ("the ground for removal need
not appear beyond a reasonable doubt in a court order before the
right to effect a removal may be unmistakably apparent").

15

Defendants received all of these "other papers" more than thirty days before they filed the Second Removal. The earlier papers gave Defendants notice of the same grounds for removal which they now assert. In order to avoid the impact of this crucial fact, Defendants contend that the only discovery that should be considered when deciding the timeliness of their removal is that obtained from putative class representatives.[12] However, Defendants' only support for this contention is neither controlling nor relevant to the matter at issue here.[13] The court is not aware of controlling authority, or a compelling policy argument, which would require this court to ignore all discovery obtained from non-representative Plaintiffs. On the contrary, such a holding would run afoul of the principle underlying § 1446(b), which does not allow "strategic delay

---

[12] Even if this court were to accept Defendants' argument on this point, it would not exclude Smith's affidavit or McPhatter's affidavit and deposition. The Hypothetical Asset Allocation was an exhibit to all three of these "other papers."

[13] In re Carbon Dioxide Indus. Antitrust Litig., 155 F.R.D. 209 (M.D. Fla. 1993), merely holds that where defendants were put on notice that discovery would be limited to the class representatives and there was no showing of particularized need, the court will not compel discovery from non-named class members. Id. at 212. In this case, Defendants have had the benefit of extensive discovery concerning non-representative Plaintiffs. Defendants should not be permitted to ignore what they learned during the course of that discovery. Moreover, the class action is proceeding in state court and, as such, state law applies to questions concerning the relative weight and admissibility of statements made by class representatives and class members during depositions.

16

interposed by a defendant in an effort to determine the state court's receptivity to his litigating position," <u>Lovern v. GMC</u>, 121 F.3d 160, 162 (4th Cir. 1997), and does not permit the defendant to "sit idly" while the thirty-day removal period runs and thereby "'squander both judicial resources and the resources of his adversary.'" <u>Haber v. Chrysler Corp.</u>, 958 F. Supp. 321, 326 (E.D. Mich. 1997) (quoting <u>Kaneshiro v. North Am. Co. for Life & Health Ins.</u>, 496 F. Supp. 452, 457 (D. Haw. 1980)).

Defendants have not carried their burden of persuasion that the Smith Deposition was unique or more significant than the affidavits and depositions that came before it. Assuming <u>arguendo</u> that the Smith Deposition contained adequate testimony on which to establish federal jurisdiction, it was not the first "other paper" which revealed on its face the same grounds. To the extent there are any ambiguities about whether the information in the earlier papers was substantially similar to the Smith Deposition, the court must find in favor of remand. <u>Mulcahey v. Columbia Organic Chems. Co., Inc.</u>, 29 F.3d 148, 151 (4th Cir. 1994). Thus, because Defendants had substantially similar "other papers" more than thirty days before they filed the Second Notice of Removal, removal pursuant to 28 U.S.C. § 1446(b) is barred.[14] <u>Accord Riverdale Baptist Church v.</u>

---

[14] There is another, independent ground on which to reach the conclusion that the Second Removal was untimely. In the
(continued...)

<u>Certainteed Corp.</u>, 349 F. Supp. 2d 943, 953 (D. Md. 2004) (holding defendant's "newfound reliance" on a deposition as trigger for thirty-day removal window was "disingenuous" and untimely where defendant had previously received the exhibits upon which the deposition testimony was based); <u>Link Telecomms., Inc. v. Sapperstein</u>, 119 F. Supp. 2d 536, 544 (D. Md. 2000). (where deposition of plaintiff's president merely "connected" and "reconfirmed" bits of information that had been received earlier via other papers, removal was untimely because "[w]hat defendants learned at the deposition did not extend the date for removal of the case to this Court"); <u>Wingfield v. Franklin Life Ins. Co.</u>, 41 F. Supp. 2d 594, 598 (E.D. Va. 1999) (removal was untimely when filed more than thirty days after defendant received first paper revealing grounds for removal); <u>Lee v. Altamil Corp.</u>, 457 F. Supp. 979, 981 (M.D. Fla. 1978) (where discovery documents revealed basis for federal jurisdiction and were received prior to plaintiff's answers to defendant's requests for admissions,

---

[14](...continued)
Second Notice of Removal, Defendants admit that "the Amended Complaint makes clear that Plaintiffs['] claims are based on alleged misrepresentations or omissions of material fact by employees of SSB and/or the use of a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." (Second Notice of Removal ¶ 18.) The Amended Complaint was served on June 29, 2004. According to Defendants' own argument, Defendants would have been required to remove within thirty days of the amended complaint. They missed that window. Thus, on the face of their own pleading, Defendants' Second Removal was untimely.

admissions were not first "other paper" and removal was
untimely).  Because removal was procedurally defective, remand is
required pursuant to 28 U.S.C. § 1447.[15]

_____

[15] Because Defendants did not comply with the thirty-day
removal period required by § 1446(b), the court is not required
to address Defendants' substantive grounds for removal.  <u>Link</u>,
119 F. Supp. 2d at 542.  However, in the interest of thoroughness
and as support for the award of costs, the court has analyzed
those arguments.

Even if the Second Removal was timely, remand would still be
required because the Smith Deposition is insufficient to
establish federal subject matter jurisdiction.  SLUSA preempts
all covered class actions wherein the plaintiffs "<u>allege</u>" either
"a misrepresentation or omission of a material fact in connection
with the purchase or sale of a covered security" or "that the
defendant used or employed any manipulative or deceptive device
or contrivance in connection with the purchase or sale of a
covered security."  15 U.S.C. § 78bb(f) (2002) (emphasis added).
<u>Thus, the threshold question is:  What are Plaintiffs'
allegations?</u>  If Plaintiffs' allegations are within the reach of
SLUSA, subject matter jurisdiction is established and removal is
proper.  If they are not, subject matter jurisdiction is lacking
and remand is required.

Defendants assert that Smith's Deposition testimony changed
the allegations of the entire class, such that his statements
establish that "<u>the class</u> complains about advice and information
provided by Defendants in connection with the solicitation and
purchase of covered securities."  (Second Notice of Removal ¶ 17)
(emphasis added).  However, Smith's agreement with defense
counsel's leading questions does not change the litigation
position of the entire class of Plaintiffs.  The Amended
Complaint (not Smith's Deposition transcript and not Defendants'
characterization of those documents) contains the official
allegations of the Plaintiffs.  Smith's testimony is mere
evidence, which may or may not be admissible, about <u>potential</u>
claims he has <u>not</u> pled.  It neither relates to nor binds the
other Plaintiffs and does not change the court's analysis of
whether the case is removable.  <u>Karambelas v. Hughes Aircraft
Co.</u>, 992 F.2d 971, 975 (9th Cir. 1993) (defendant cannot remove
based on "speculative answers to clever questioning during heat
of a deposition" where plaintiff "never pled and never sought
                                                (continued...)

19

¹⁵(...continued)
recovery" under federal statute; also distinguishing other cases
which permit removal based upon facts developed at a deposition
when it is clear that true gravamen of the action is a federal
claim); <u>Rivers v. Int'l Matex Tank Terminal</u>, 864 F. Supp. 556,
559-60 (E.D. La. 1994) (finding plaintiff's "deposition does not
constitute an 'other paper' under § 1446(b) because it was not a
truly voluntary act, it was not a definitive statement of the
plaintiff's evidence or lack thereof, and it did not rise to the
level of certainty that is required for defendants to carry their
burden of showing the propriety of removal").

The court is unaware of any support for the conclusion that
deposition testimony from a layman, even if he is a putative
class representative, drawn out by leading questions from
opposing counsel, regarding legal theories of the case and
grounds for relief can alter the allegations of the class.  The
cases cited by Defendants are not dispositive.  <u>See</u> <u>Brinkley v.
Universal Health Servs., Inc.</u>, 194 F. Supp. 2d 597 (S.D. Tex.
2002) (not a class action lawsuit and merely holding that expert
deposition taken by plaintiff's own lawyer was a "voluntary act"
of the plaintiff that constituted "other paper"); <u>Huffman v. Saul
Holdings Ltd. P'ship</u>, 194 F.3d 1072 (10ᵗʰ Cir. 1999) (not a class
action lawsuit and merely holding that testimony from plaintiff
concerning the amount in controversy was notice to the defendant
for removal purposes).  On the contrary, inconsistencies between
a putative class representative's testimony and the class's
claims concern the representative's adequacy and are resolved as
part of the certification process, according to North Carolina
law.  <u>See</u> <u>Pitts v. Am. Sec. Ins. Co.</u>, 550 S.E.2d 179, 189, 191
(N.C. App. 2001) (holding there is no requirement that all class
members' claims be identical and "[p]laintiff's lack of knowledge
at her deposition as to the specific legal nature of her claims
does not render her unable to protect the interests of the
proposed class members"), <u>aff'd</u>, 569 S.E.2d 647 (N.C. 2002).

Simply put, Smith's testimony does not unilaterally
transform a properly-pled, state law class action lawsuit into a
federal securities fraud case.  Plaintiffs have not amended their
complaint to assert claims or seek damages that may be available
under SLUSA.  Plaintiffs have not retracted their express
disclaimer of any such claims.  Rather, Plaintiffs remain
committed to their state law claims and they retain their right
to litigate in state court.  Remand is, again, proper.  <u>Accord
Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392, 399 (1987)
(continued...)

II.  Award of Costs and Expenses Is Appropriate in this Case

    Section 1447(c) provides:  "An order remanding the case may

require payment of just costs and any actual expenses, including

attorney fees, incurred as a result of the removal."  28 U.S.C.

§ 1447(c) (2005).  An award is within the court's discretion,

Parker v. Johnny Tart Enters., Inc., 104 F. Supp. 2d 581, 585

_____

    [15](...continued)
(plaintiff is "master of the claim" and "defendant cannot, merely
by injecting a federal question into an action that asserts what
is plainly a state-law claim, transform the action into one
arising under federal law, thereby selecting the forum in which
the claim shall be litigated"); Erb v. Alliance Capital Mgmt.,
L.P., 423 F.3d 647 (7th Cir. 2005)(dismissing appeal of district
court's remand order where defendant mutual fund manager twice
tried to remove investor's state court action (which alleged
breach of contract concerning the purchase of certain
securities), arguing that case was a disguised misrepresentation
claim that was preempted by SLUSA and holding that defendant "has
new grounds to argue for preemption only if the amended complaint
alleges [a violation of SLUSA], where the original did not");
Karambelas, 992 F.2d at 975; Bachman v. A.G. Edwards, 2005 WL
2346896, at *4 n.13 (E.D. Mo. 2005) (court must consider the
focus of the complaint and "[t]he fact that some class members
might also have unasserted preempted claims does not render the
[complaint] subject to SLUSA"); Tierney v. Unum Life Ins. Co. of
Am., 2001 WL 1172182 (N.D. Tex. 2001) (remanding a second time
because plaintiff's deposition did not unearth new facts, but
merely provided new evidence of defendant's earlier failed
preemption argument), cert. denied, 541 U.S. 1042 (2004); Burns
v. Prudential, 116 F. Supp. 2d 917 (N.D. Ohio 2000) (state law
class action was not preempted because plaintiffs did not allege
claims under SLUSA); Abada v. Charles Schwab & Co., Inc., 127 F.
Supp. 2d 1101, 1103 (S.D. Cal. 2000) ("[T]o require plaintiff to
litigate a securities fraud action when such an action was not
intended would work a manifest injustice.  Plaintiff's original
complaint set forth appropriate state law claims . . . and the
claims are not preempted by [SLUSA].  In the absence of
preemption, there is no federal subject matter jurisdiction and
remand . . . is appropriate."), appeal dismissed, 300 F.3d 1112
(9th Cir. 2002) (holding remand order not appealable).

(M.D.N.C. 1999), and may be made whether or not removal was in bad faith. In re Lowe, 102 F.3d 731, 733 n. 2 (4th Cir. 1996). Accord Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000); Miranti v. Lee, 3 F.3d 925, 929 (5th Cir. 1993); Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 445-47 (9th Cir. 1992); Morgan Guar. Trust Co. v. Republic of Palau, 971 F.2d 917, 923-24 (2d Cir. 1992).

An award under § 1447(c) is remedial, not punitive, and is designed to compensate the plaintiff when, in the court's discretion, justice so requires. Moore, 981 F.2d at 447; Shrader v. Legg Mason Wood Walker, Inc., 880 F. Supp. 366, 368 (E.D. Pa. 1995). Reimbursement is appropriate in a variety of situations, including untimely removal, removal based on an erroneous legal argument, repetitive removals, and removal which greatly increases the cost and/or complexity of the case. See Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000) (award of attorney's fees permitted when "removal, while 'fairly supportable,' was wrong as a matter of law"); Benson v. SI Handling Sys., Inc., 188 F.3d 780, 783 (7th Cir. 1999) ("Multiple removals could . . . lead to sanctions, if nothing of significance changes between the first and second tries.") (internal citation omitted); LaMotte v. Roundy's, Inc., 27 F.3d 314, 316 (7th Cir. 1994) (award under § 1447(c) is appropriate whether remand is based on jurisdictional defect or a

defect in the removal procedure); <u>Morgan Guar. Trust of N.Y.</u>, 971 F.2d at 923-24 (approving of district court's award under § 1447(c) when based on "overall fairness given nature of the case, the circumstances of remand and the effect on the parties"); <u>Martyak v. Martyak</u>, 378 F. Supp. 2d 1365, 1369 (S.D. Fla. 2005) (awarding fees where removal petition did not raise "novel questions of law"); <u>Ins. Co. of Pa. v. Waterfield</u>, 371 F. Supp. 2d 146, 151 (D. Conn. 2005) (award of attorney's fees proper where removal was untimely and defendant had stalled and delayed case); <u>Tierney v. Unum Life Ins. Co. of Am.</u>, 2001 WL 1172182, at *2 (N.D. Tex. 2001) (awarding expenses where removal was based on deposition which merely supported facts defendants already had), <u>cert. denied</u>, 541 U.S. 1042 (2004); <u>Greenidge v. Mundo Shipping Corp.</u>, 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999) (award of expenses was proper, despite lack of bad faith, because removal "greatly complicated" the "relatively simple" state court case, making it "unfair to require [plaintiffs] or their counsel to absorb the cost of litigating the remand motion," and because "the impropriety of the removal should have been clear" to defendant's counsel, who was experienced in this area of law).

In this case, the costs and expenses incurred as a result of the untimely Second Removal should be borne by Defendants. First, they have forced Plaintiffs to come to federal court for a second time, which has complicated, delayed and increased the

23

cost of their state court action. Second, Defendants' support
for the Second Removal was weak, and was not substantially
different from that offered by Defendants in support of the first
removal. Third, the Second Removal was very late, having been
filed long after the thirty-day deadline and after the case had
made significant progress in state court. Finally, federal
district courts have previously ruled against Defendant Salomon
Smith Barney and its lawyers when they removed cases beyond the
thirty-day window or based on false claims of SLUSA preemption.
See Cline v. Fairbanks Capital Corp., 2004 WL 1146694 (M.D.N.C.
2004) (Osteen, J.) (remand was required in case where defendants,
represented by counsel for Defendants in this case, filed notice
of removal only seven days late); Norman v. Salomon Smith Barney,
Inc., 350 F. Supp. 2d 382, 386-88 (S.D.N.Y. 2004) (SSB did not
establish basis for preemption of investor's state law claims
pursuant to SLUSA); see also Suder v. Blue Circle, Inc., 116 F.3d
1351 (10th Cir. 1997) (upholding award of fees where removal was
improper and defendant had twice been informed by federal
district courts that removal of similar cases was improper). In
light of these factors, it would be unjust to make Plaintiffs
bear the costs and expenses incurred as a result of the Second
Removal.

24

In accordance with Local Rule 54.2, the parties shall consult and attempt to agree on the amount of Plaintiffs' just costs and expenses incurred as a result of the Second Removal. The amount should include only those costs and expenses, including reasonable attorneys' fees, associated with the Second Removal, not the first removal.

## CONCLUSION

For the reasons set forth above, the court will grant Plaintiffs' motion to remand and motion for costs and expenses pursuant to 28 U.S.C. § 1447(c). All remaining, pending motions, which are Defendants' Motion to Dismiss (filed January 10, 2005) and Plaintiffs' Motion to Defer Consideration of Motion to Dismiss, Motion to Strike, Motion to Supplement Opposition to Motion to Dismiss, and Motion for Leave to Amend Complaint (all filed March 24, 2005), are rendered moot.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

Frank W B Bullock, Jr.

United States District Judge

November 18, 2005